## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

PHILIP WILLNER,

        Plaintiff,

   v.

SYNTEL, INC.

        Defendant.

Case No.
Hon.

_____/

**Hubbard Snitchler & Parzianello, PLC**
John A. Hubbard (P36924)
Attorneys for Plaintiff
719 Griswold St., Suite 620
Detroit, MI 48226
313.672.7300
jhubbard@hspplc.com

**Purcell Julie & Lefkowitz LLP**
Steven J. Purcell
Douglas E. Julie
Robert H. Lefkowitz
Co-Counsel for Plaintiff
65 Broadway, Suite 828
New York, New York 10006
212-725-1000
spurcell@pjlfirm.com

_____/

## COMPLAINT

Plaintiff Philip Willner ("Plaintiff"), by his undersigned counsel, alleges upon information and belief, except for his own acts, which are alleged upon personal knowledge, as follows:

### PARTIES

1.    Plaintiff is a citizen of the State of New York. Plaintiff is, and has been at all relevant times, the owner of Syntel, Inc. ("Syntel" or the "Company") stock. Plaintiff was entitled to vote at the Company's 2016 Annual Meeting of Shareholders (the "2016 Annual Meeting").

2.      Syntel is a corporation organized and existing under the laws of the State of Michigan, which maintains its principal offices at 525 E. Big Beaver Road, Suite 300, in Troy, Michigan. Syntel is a global provider of digital transformation, information technology and knowledge process outsourcing services to Global 2000 companies.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

4.      This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

5.      Venue is proper in this district because Syntel maintains its principal place of business in this district.

## SUMMARY INTRODUCTION

6.      Plaintiff brings this action against Syntel, Inc., seeking an award of attorneys' fees and expenses for a benefit conferred on the Company's shareholders by means of a pre-suit demand that caused corrective action to be taken and enabled shareholders to render a fully-informed vote on a proposed corporate action.

7.      On May 10, 2016, Plaintiff sent a shareholder demand letter (the "Demand,") to Syntel's Board of Directors (the "Board"). In his Demand, Plaintiff alleged that the Board breached its contractual and fiduciary duties by granting restricted stock units to Prashant Ranade ("Ranade"), the Company's Executive Vice Chairman, in excess of the annual limit imposed by Syntel's shareholder-approved Amended and Restated Stock Option and Incentive Plan (the "Plan"). Additionally, Plaintiff alleged that the Company's Schedule 14A Definitive Proxy Statement filed with the U.S. Securities and Exchange Commission (the "SEC") on April

29, 2016 (the "2016 Proxy") in connection with the 2016 Annual Meeting was materially false and misleading. Specifically, Plaintiff contended that, in seeking shareholder approval of a new stock plan, the 2016 Incentive Plan (the "2016 Plan"), the Board had (i) failed to disclose that it had exceeded the Plan's annual limit in connection with the award to Ranade, and (ii) falsely represented that the 2016 Plan restricted the amount of stock awards that the Board could grant to an individual participant during a calendar year to no more than 1,850,000 shares when in fact there were no such restrictions in the actual terms of the 2016 Plan. A true and correct copy of the Demand is attached hereto as Exhibit A.

8.      In response to Plaintiff's Demand, the Board caused Syntel to issue corrective disclosures in a supplemental Schedule 14A Proxy Statement, filed with the SEC on May 18, 2016 (the "Supplemental Proxy"). In the Supplemental Proxy, Syntel "update[d] the subsection on page 11 of the Proxy Statement captioned 'Individual Award Limits'" to disclose that the previously-disclosed annual "limit" of 1,850,000 shares applied "*only to Section 162(m) Awards under the 2016 Plan and not to any other awards*." (emphasis added). A true and correct copy of the Supplemental Proxy is attached hereto as Exhibit B.

9.      Thus, the Supplemental Proxy informed shareholders that, contrary to the prior false description in the 2016 Proxy, the 2016 Plan does not in fact include an absolute 1,850,000 share annual limit on stock awards, but instead only limits so-called "Section 162(m) Awards," which the Plan otherwise defines as awards that the Board intends to qualify for the federal tax deduction available under Section 162(m) of the Internal Revenue Code. The decision whether any particular award will be a "Section 162(m) Award" is entirely at the discretion of the Board. If the Board decides that it does not wish for Syntel to avail itself of the tax deduction under

Section 162(m), it may give any person as many as 16 million shares (the aggregate limit of the 2016 Plan) at any time.

10.     It is well established that representative plaintiffs and their counsel are entitled to an award of attorneys' fees and expenses for producing a benefit to a represented class. *Merkel v. Long*, 372 Mich. 144, 148 (Mich. 1963); *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 396 (1970); *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del. 1989). This principle – known as the common or corporate benefit doctrine – includes any tangible and substantial benefit that is conferred on a company and its shareholders, including "[c]hanges in corporate policy or," as here, "a heightened level of corporate disclosure" to shareholders. *Tandycrafts*, 562 A.2d at 1164-65. Accordingly, Plaintiff seeks an award of attorneys' fees and expenses in connection with the substantial benefit he conferred on the Company's shareholders. Were it not for his counsel's investigation and review of the Company's voluminous SEC filings, and the resulting Demand, shareholders would have been deprived of their fundamental right to an informed vote at the 2016 Annual Meeting.

11.     Plaintiff attempted to resolve his request for a reasonable attorneys' fee without litigation but the Company refused to negotiate.

## SUBSTANTIVE ALLEGATIONS

12.     In seeking shareholder approval of the 2016 Plan, the Board was required to make full, fair, and truthful disclosures. The Board was required to provide shareholders with "a balanced, truthful account of all matters" that were disclosed in the 2016 Proxy, including the terms of the stock plan the Board was asking shareholders to approve. *In re Pure Res. Inc. S'holders. Litig.*, 808 A.2d 421, 448 (Del. Ch. 2002) (citing *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998)). "When a document ventures into certain subjects," such as the 2016 Proxy's

discussion of the 2016 Plan's material terms, "it must do so in a manner that is materially complete and unbiased by the omission of material facts."[1] *Id.*

**A.      Section 162(m) of the Internal Revenue Code**

13.      Section 162(m) of the Internal Revenue Code, 26 U.S.C. § 162(m) ("Section 162(m)"), subjects publicly-held corporations to special restrictions concerning the compensation paid to their chief executive officer and the next three most highly compensated executives of the company, not including the chief financial officer (the "Covered Employees").

14.      According to its legislative history, Section 162(m) was motivated by concerns about corporate abuses involving excessive executive compensation in public companies, and the law is intended to bring about a reduction in the prevalence of these abuses.

15.      Whereas Section 162(a)(1) of the Code generally allows a publicly-held corporation to take an income tax deduction for "a reasonable allowance for salaries or other compensation for personal services actually rendered" by its employees, Section 162(m) provides that ***compensation in excess of $1 million*** paid by a publicly-held corporation to a Covered Employee ***is generally not tax-deductible***.

16.      Section 162(m)(4)(C) provides an exception to this rule in the case of compensation that is structured in a manner that qualifies as "performance-based compensation." The ability to take advantage of this exception is guided by Section 1.162-27 of the Treasury Regulations ("Treas. Reg.") promulgated under Section 162(m), which provides a set of rules

---

[1] The SEC's regulations also mandate full and accurate disclosure of a stock plan's actual terms. Specifically, Item 10 of Schedule 14A, titled *Compensation Plans*, identifies the mandated disclosures that must be made when a compensation plan is being approved or amended. It requires disclosure of the "material features of the plan being acted on." Federal law specifically identifies the per-participant limit as one of the "material terms" of a compensation plan. *See* Treas. Reg. §1.162-27(e)(4)(i).

that must be followed in order for compensation to qualify as "performance-based compensation" and be tax-deductible under §162(m)(4)(C).

17.     Among the rules, Section 1.162-27(e)(4) of the Treasury Regulations establishes certain shareholder-approval requirements. As stated in Treas. Reg. §1.162-27(e)(2)(vi)(A), with respect to stock options and stock appreciation rights, a company's shareholder-approved compensation plan pursuant to which such awards are granted must disclose "the maximum number of shares with respect to which options or rights may be granted during a specified period to any employee."

18.     Similarly, as stated in Treas. Reg. §1.162-27(e)(4)(i), with respect to all other compensation, the Company must disclose and receive shareholder approval of "either the maximum amount of compensation that could be paid to any employee or the formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained."

19.     Shareholder-approved compensation plans that contain these limits, and otherwise satisfy the other requirements contained in Section 162(m) and its regulations, provide companies with the ability to grant awards under that plan that qualify as "performance-based compensation" under Section 162(m) and thus qualify for the tax deduction.

20.     A board of directors generally has no duty under the federal securities laws, the Internal Revenue Code, state law, or otherwise, to grant awards that qualify as tax-deductible "performance-based compensation" under Section 162(m).

**B.     Syntel's 2016 Plan and the 2016 Proxy**

21.     In Proposal 2 of the 2016 Proxy, the Board sought shareholder approval of a new stock plan, the 2016 Plan, which reserved 16 million shares of Syntel common stock for issuance

in the form of stock options, stock appreciation rights, restricted stock, performance shares, and annual incentive awards to the Company's employees, non-employee directors, and consultants. The Board's Compensation Committee (the "Compensation Committee") was designated as the administrator of the 2016 Plan.

22.   As disclosed in the 2016 Proxy, as of December 31, 2015, there were approximately 24,537 employees and five non-employee directors eligible to receive awards under the 2016 Plan.

23.   The 2016 Proxy affirmatively and unequivocally misrepresented material terms of the 2016 Plan. In stark contrast to the Plan itself, the 2016 Proxy represented that the 2016 Plan imposed an absolute limit on the number of awards that may be granted to an individual during any fiscal year, expressly stating that no one may receive in any fiscal year awards covering more than 1,850,000 shares (specifically, no more than 800,000 stock options, 250,000 stock appreciation rights, or more than 200,000 each of restricted stock, restricted stock units, performance awards, and incentive awards).

24.   Specifically, in a section titled "***Individual Award Limits***," the 2016 Proxy stated that the 2016 Plan unconditionally restricted the number of awards that the Compensation Committee may grant to an individual participant on an annual basis as follows:

> The 2016 Plan ***limits the total grants to any one employee participant in any one fiscal year*** to: (i) 800,000 shares of Common Stock subject to stock options; (ii) 250,000 shares of Common Stock subject to stock appreciation rights; (iii) 200,000 shares of Common Stock subject to restricted stock awards or restricted stock units; (iv) 200,000 shares of Common Stock subject to performance awards; and (v) 200,000 shares of Common Stock subject to incentive awards. (emphasis added).

25.   In fact, however, as the Company was soon forced to admit, the 2016 Plan imposes no such limit. Specifically, Section 7.3, titled "Individual Participant Limitations," states as follows:

7

Subject to adjustment as provided in Section 9.1, *with respect to those Awards which are designated (or deemed designated) by the Committee to be Code Section 162(m) Awards*:

(a) no Employee Participant in any one fiscal year of the Corporation may be granted:

(i) Options with respect to more than eight hundred thousand (800,000) shares of Common Stock;

(ii) Stock Appreciation Rights with respect to more than two hundred thousand (200,000) shares of Common Stock;

(iii) Restricted Stock Awards with respect to more than two hundred thousand (200,000) shares of Common Stock;

(iv) Restricted Stock Unit Awards that are denominated in shares of Common Stock with respect to more than two hundred thousand (200,000) shares;

(v) Performance Awards that are denominated in shares of Common Stock with respect to more than two hundred thousand (200,000) shares; or

(vi) Incentive Awards that are denominated in shares of Common Stock with respect to more than two hundred thousand (200,000) shares.

(emphasis added.)

26.     Section 1.4(h) of the Plan defines "Code Section 162(m) Awards" as "an Award which is designated (or deemed designated) by the [Compensation] Committee pursuant to Section 7.1 to be subject to the requirements of [Internal Revenue] Code Section 162(m) and regulations thereunder (to the extent applicable)."

27.     Thus, pursuant to the express and clear terms of the 2016 Plan, each of the per-participant annual limits described in the 2016 Proxy were only applicable to awards that the Compensation Committee specifically designates as subject to Section 162(m)'s rules and regulations, *i.e.*, awards the Compensation Committee specifically intends to be eligible for the tax deduction.

28.     Moreover, the terms of the 2016 Plan do not require that all awards qualify as tax-deductible under Section 162(m). Instead, the 2016 Plan provides the Compensation Committee with complete discretion in determining whether or not to grant awards that so qualify. Thus, there are effectively no per-participant annual limits in the 2016 Plan, as the Compensation

8

Committee can grant any number of awards to any single participant (subject only to the 2016 Plan's 16 million share aggregate limit) simply by not intending those awards to qualify for a tax deduction under Section 162(m).

29.     Whether or not there is in fact a true annual individual limit on awards is information that a reasonable shareholder would deem important when considering whether to approve the 2016 Plan.

30.     The 16 million shares of Syntel common stock reserved for issuance under the 2016 Plan represents over 19% of Syntel's outstanding common stock.[2] As awards are granted under the 2016 Plan, Syntel's existing shareholders' stakes in the Company will be diluted.

31.     On the other hand, as stated in Proposal 2 of the 2016 Proxy, the 2016 Plan was intended to serve as a compensation vehicle for all 24,537 of Syntel's employees, "promote the best interests of Syntel and its shareholders by encouraging employees, non-employee directors and consultants to acquire an ownership interest in Syntel through the granting of stock based awards thus aligning their interests with those of the shareholders," and "enhance the ability of Syntel and its subsidiaries to attract, retain, motivate and reward qualified employees, non-employee directors and consultants."

32.     A per-participant annual cap on each type of award, and particularly a cap on non-performance-based full-value awards,[3] goes a long way towards achieving these beneficial purposes and alleviating any shareholder concerns regarding the inherent dilutive nature of a stock-based compensation plan. An absolute cap would also help ensure that the 16 million share

---

[2] There were 83,952,151 shares of Syntel common stock outstanding as of April 11, 2016.
[3] Under the 2016 Plan, the "full-value" awards consist of restricted stock, restricted stock units, performance awards, and incentive awards. A "full-value" award, unlike stock options or stock appreciation rights, has no purchase or exercise cost to the recipient; rather, the recipient receives the full value of each share that is awarded. Under the 2016 Plan, the only "full-value" awards not based on performance are restricted stock and restricted stock units.

reserve is more fairly allocated among the Company's over 24,000 employees rather than just distributed among a select few high-level executives, and would also ensure in practice that dilution is kept in check. Thus, given such a per-participant limit, a reasonable shareholder may certainly consider voting in favor of the 2016 Plan, notwithstanding its potential negative consequences.

33.      Thus, when casting a vote at the 2016 Annual Meeting, a reasonable shareholder would find it important to know the *actual* scope of the Compensation Committee's authority to issue shares of common stock under the 2016 Plan if it was approved. Specifically, a reasonable shareholder would find it important to know that the 2016 Plan does not actually contain annual limits, as falsely represented in the 2016 Proxy, and that the Compensation Committee instead has complete discretion to grant any participant an unlimited number of awards, particularly full-value awards (subject only to the 2016 Plan's 16 million share aggregate limit) at any time.

34.      Indeed, under the 2016 Plan as actually promulgated (as opposed to the description in the 2016 Proxy), the Compensation Committee could grant all 16 million shares as a restricted stock award to Syntel's Chief Executive Officer, thereby causing substantial dilution to the Company's public shareholders without accomplishing the 2016 Plan's stated purposes. A reasonable shareholder, concerned about unfair executive compensation specifically, or dilution generally, would certainly consider voting against such a plan.

35.      As a result of the Board's affirmative misrepresentations regarding the 2016 Plan's annual limits, Syntel shareholders were being misled about the material terms of the 2016 Plan that they were being asked to approve.

**C.      After Plaintiff served his Demand, the Board promptly took corrective action**

10

36.     In an attempt to obtain corrective action in advance of the 2016 Annual Meeting scheduled for June 8, 2016, Plaintiff served his Demand on May 10, 2016.

37.     In his Demand to the Board, Plaintiff explained why the 2016 Proxy was materially false and misleading and demanded that the Board issue a supplemental disclosure to correct the 2016 Proxy before shareholders voted at the 2016 Annual Meeting. The Demand was delivered the following morning via overnight courier.

38.     The Company initially responded to the Demand on May 18, 2016 (the "Response"). In its Response, the Company requested proof of Plaintiff's status as a Syntel shareholder, which Plaintiff thereafter provided on May 23, 2016. In its Response, the Company directed Plaintiff to the filing of the Supplemental Proxy earlier that day. Lastly, with respect to the additional claims related to the violation of the Plan, the Company indicated that it would determine whether a "derivative proceeding" was "in the best interests of the corporation" pursuant to MCL 450.1493a(b). A true and correct copy of the Response is attached hereto as Exhibit C.

39.     In the Supplemental Proxy, Syntel "update[d] the subsection on page 11 of the Proxy Statement captioned 'Individual Award Limits'" to disclose that the previously-disclosed annual "limit" would "apply *only to Section 162(m) Awards under the 2016 Plan and not to any other awards*." (emphasis added).

40.     The Supplemental Proxy replaced the prior description of the 2016 Plan with the following:

> ### Individual Section 162(m) Award Limits
>
> The 2016 Plan *limits the total Section 162(m) Award grants to any one employee participant in any one fiscal year* to: (i) 800,000 shares of Common Stock subject to stock options; (ii) 250,000 shares of Common Stock subject to stock appreciation rights; (iii) 200,000 shares of Common Stock subject to restricted stock awards or restricted stock units; (iv) 200,000 shares

of Common Stock subject to performance awards; and (v) 200,000 shares of Common Stock subject to incentive awards. The 2016 Plan further limits the total dollar value of Section 162(m) Awards payable to any one employee participant in any one fiscal year on restricted stock units, performance awards or incentive awards valued in property other than Common Stock is limited to the lesser of $5,000,000 or ten times the employee participant's base salary for the fiscal year. (emphasis added).

41.     In other words, in the Supplemental Proxy, the Company corrected its prior false representation, notifying shareholders that the 1,850,000 share "limit" was not absolute and that the Board is in fact free to disregard the "limit" if it elects not to comply with Section 162(m). Following this supplemental corrective disclosure, at the 2016 Annual Meeting, the Company's shareholders approved the 2016 Plan by a vote of 70,023,305 in favor and 9,396,402 against.[4]

## CAUSE OF ACTION
### PLAINTIFF'S CLAIM FOR ATTORNEYS' FEES

42.     Plaintiff restates and realleges the allegation set forth in Paragraphs 1-41 above as if fully set forth herein.

43.     Plaintiff's Demand raised meritorious legal claims with respect to the Board's false and misleading disclosures in the 2016 Proxy.

44.     In response to the meritorious Demand, Syntel promptly remediated the disclosure problem, which directly conferred a substantial and fundamental benefit on the Company's shareholders, which in turn entitles Plaintiff to receive a reasonable attorneys' fee.

---

[4] The false and misleading disclosure claims were not derivative claims, but rather direct claims possessed by Plaintiff and other Syntel shareholders. With respect to the derivative claims asserted in the Demand, in a letter dated August 8, 2016, Syntel informed Plaintiff that it had elected to proceed pursuant to MCL 450.1495(2)(c) and that, following its securing of the judicial appointment of a "disinterested person" (on an ex parte basis and without any notice to Plaintiff), it had obtained a "determination" from such "disinterested person" that "it was not in the best interest of Syntel to pursue the claims in the Demand and that a derivative proceeding based upon the Demand is not justified." A true and correct copy of the Company's August 8, 2016 letter is attached hereto as Exhibit D. Plaintiff does not seek relief with respect to Syntel's refusal to pursue the derivative claims relating to the alleged violation of the Plan, which therefore is not at issue in this proceeding.

12

45.     Plaintiff counsel attempted to obtain a reasonable attorneys' fee from the Company without resort to litigation but the Company refused to negotiate.

46.     Plaintiff and his counsel have expended time and expense, completely at risk of loss and without remuneration, in connection with the successful prosecution of the direct disclosure claims asserted in the Demand, which permitted shareholders to make an informed decision about whether to approve the 2016 Plan.

47.     Plaintiff and his counsel are a direct and proximate cause of this common benefit, and it would be unjust and inequitable not to compensate Plaintiff's counsel for achieving it.

WHEREFORE, for the foregoing reasons, Plaintiff requests an order:

A.     Awarding attorneys' fees and expenses commensurate with the benefit that has been conferred as a result of the efforts undertaken by Plaintiff and his counsel, including attorneys' fees and expenses for the prosecution of this action;

B.     Granting such other relief as the Court may deem just and proper.

Respectfully Submitted:
**HUBBARD SNITCHLER & PARZIANELLO, PLC**

Dated:  October 5, 2016

 /S/ John A. Hubbard
John A. Hubbard (P93624)
Attorney for Plaintiff
719 Griswold St., Suite 620
Detroit, MI 48226

**Purcell Julie & Lefkowitz LLP**
Steven J. Purcell
Douglas E. Julie
Robert H. Lefkowitz
Co-Counsel for Plaintiff
65 Broadway, Suite 828
New York, New York 10006