UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP WILLNER,

                Plaintiff,

vs.

SYNTEL, INC.,

                Defendants.

Case No. 2:16-cv-13574

Hon. Matthew F. Leitman

Mag. Judge Stephanie Dawkins Davis

---

HUBBARD SNITCHLER & PARZIANELLO
John A. Hubbard (P39524)
Attorneys for Plaintiff
719 Griswold St., Suite 620
Detroit, MI 48226
(313) 672-7300
jhubbard@hspplc.com

PURCELL JULIE & LEFKOWITZ, LLP
Steven J. Purcell
Douglas E. Julie
Robert H. Lefkowitz
Attorneys for Plaintiff
65 Broadway, Suite 620
New York, New York 10006
(212) 725-1000
spurcell@pjlfirm.com

DYKEMA GOSSETT PLLC
Lori McAllister (P39501)
Andrew J. Kolozsvary (P68885)
Attorneys for Defendant
400 Renaissance Center
Detroit, MI 48234
(313) 568-6800
lmcallister@dykema.com
akolozsvary@dykema.com

---

## DEFENDANT'S MOTION TO DISMISS

Defendant Syntel, Inc., by its attorneys, Dykema Gossett PLLC, moves this Court for an Order dismissing Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for the reasons set forth in the accompanying Brief in Support.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

In accordance with LR 7.1(a), on November 18, 2016, counsel for Defendant contacted counsel for Plaintiff, explained the nature of the Motion and its legal basis, and requested, but did not obtain, concurrence in the relief sought.

WHEREFORE, Defendant requests that this Court grant its Motion and enter an Order dismissing Plaintiff's Complaint with prejudice; and granting such other relief in favor of Defendant and against Plaintiff, including costs and reasonable attorney's fees, as the Court shall deem necessary and just.

DYKEMA GOSSETT PLLC

By: /s/Andrew J. Kolozsvary
       Lori McAllister (P39501)
       Andrew J. Kolozsvary (P68885)
       Attorneys for Defendants
       400 Renaissance Center
       Detroit, MI 48234
       313-568-5406
       lmcallister@dykema.com
       akolozsvary@dykema.com

Date:  November 18, 2016

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP WILLNER,

              Plaintiff,

vs.

SYNTEL, INC.,

              Defendants.

Case No. 2:16-cv-13574

Hon. Matthew F. Leitman

Magistrate Judge Stephanie Dawkins Davis

---

HUBBARD SNITCHLER & PARZIANELLO
John A. Hubbard (P39524)
Attorneys for Plaintiff
719 Griswold St., Suite 620
Detroit, MI 48226
(313) 672-7300
jhubbard@hspplc.com

PURCELL JULIE & LEFKOWITZ, LLP
Steven J. Purcell
Douglas E. Julie
Robert H. Lefkowitz
Attorneys for Plaintiff
65 Broadway, Suite 620
New York, New York 10006
(212) 725-1000
spurcell@pjlfirm.com

DYKEMA GOSSETT PLLC
Lori McAllister (P39501)
Andrew J. Kolozsvary (P68885)
Attorneys for Defendant
400 Renaissance Center
Detroit, MI 48234
(313) 568-6800
lmcallister@dykema.com
akolozsvary@dykema.com

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES.................................................................. ii

STATEMENT OF ISSUES PRESENTED...............................................iv

STATEMENT OF CONTROLLING AUTHORITY...............................v

INTRODUCTION ...............................................................................1

FACTS ..............................................................................................2

    A.   The 2016 Proxy .................................................2

    B.   The Demand, the Investigation, and the Instant Complaint.................5

ARGUMENT ....................................................................................8

I.    STANDARD OF REVIEW ...........................................................8

II.   THERE IS NO CAUSE OF ACTION FOR AN AWARD OF ATTORNEY'S FEES...........................................................9

    A.   Plaintiff Is Not Entitled to Attorneys' Fees Under Michigan's Common Fund Doctrine.......................................10

    B.   Plaintiff's Reliance on Federal and Delaware Law Is Inappropriate and Unavailing ...............................12

III.  EVEN IF THERE WERE A CAUSE OF ACTION FOR ATTORNEY'S FEES, PLAINTIFF COULD NOT HAVE STATED A PLAUSIBLE DISCLOSURE CLAIM........................................15

CONCLUSION ................................................................................20

# INDEX OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662; 129 S.Ct. 1937 (2009) ....................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544; 127 S.Ct. 1955 (2007) ....................................................9

*Chrysler Corp. v. Dann*,
   223 A.2d 384 (Del. 1966) .....................................................................13

*Cicelski v. Sears, Roebuck & Co.*,
   132 Mich. App. 298; 348 N.W.2d 685 (1984) ...................................11

*Davis & Cox v. Summa Corp.*,
   751 F.2d 1507 (9th Cir. 1985) ............................................................10

*Dessart v. Burak*,
   470 Mich. 37; 678 N.W.2d 615 (2004) ...............................................10

*Garcia v. Farmers Ins. Exch.*,
   226 Mich. App. 254; 573 N.W.2d 627 (1997) ............................. 11-12

*In re Attorney Fees of Kelman, Loria, Downing, Schneider &
   Simpson*,
   406 Mich. 497; 280 N.W.2d 457 (1979) ............................................11

*In re Clarence W. Temple and Florence A. Temple Marital Trust*,
   278 Mich. App. 122; 748 N.W.2d 265 (2008) ...................................10

*In re Sauer-Danfoss Inc. S'holders Litig.*,
   65 A.3d 1116 (Del. Ch., 2011) ...........................................................13

*Loudon v. Archer-Daniels-Midland Co.*,
   700 A.2d 135 (Del. 1997) ..............................................................15, 16

*Mangold v. Cal. Pub. Utils. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) ................................................................9

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

*Miller v. Citizens Ins. Co.*,
490 Mich. 904; 804 N.W.2d 740 (2011) ............................................................... 11

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375, 90 S. Ct. 616 (1970) ............................................................... 12, 13

*Nemeth v. Abonmarche Dev.*,
457 Mich. 16; 576 N.W.2d 641 (1998) ............................................................... 11

*Pavlidis v. New England Patriots Football Club, Inc.*,
675 F. Supp. 706 (D. Mass. 1987) ............................................................... 9

*Popma v. Auto Club Ins. Ass'n*,
446 Mich. 460; 521 N.W.2d 831 (1994) ............................................................... 10, 11

*Skeen v. Jo-Ann Stores, Inc.*,
750 A.2d 1170 (Del. 2000) ............................................................... 16

*Tandycrafts, Inc. v. Initio Partners*,
562 A.2d 1162 (Del. 1988) ............................................................... 12, 13

*Thielen v. GMAC Mortgage Corp.*,
671 F. Supp. 2d 947 (E.D. Mich. 2009) ............................................................... 9

*Unicorp Fin. Corp. v. First Union Real Estate Equity & Mortg. Inv.*,
515 F. Supp. 249 (S.D. Ohio 1981) ............................................................... 16

*Vizcaino v. Microsoft Corp.*,
142 F. Supp. 2d 1299 (W.D. Wash. 2001) ............................................................... 9

**RULES**

Fed. R. Civ. P. 8 ............................................................... v

Fed. R. Civ. P. 12(b)(6) ............................................................... v, 2, 8

**STATUTES**

M.C.L. 450.1495(2)(c) ............................................................... 7

M.C.L. 450.1497 ............................................................... 14

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

## <u>STATEMENT OF ISSUES PRESENTED</u>

Whether the Court should dismiss Plaintiff's Complaint for attorneys' fees where there is no basis for such a claim for fees under Michigan law and where there was no value associated with Plaintiff's counsel's threat of a claim which was determined by a disinterested person appointed by the Oakland County Circuit Court to have no merit, and which Plaintiff never brought as a lawsuit?

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Defendant relies on Fed. R. Civ. P. 8 and 12(b)(6), and the additional authorities cited in its accompanying brief.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

### <u>INTRODUCTION</u>

This "case" represents a blatant and baseless money grab by Plaintiff's counsel.  It asserts a single purported cause of action—"Plaintiff's Claim For Attorneys' Fees"—that simply does not exist under Michigan law.  As this Court is well aware, Michigan follows the "American rule," under which even when a lawsuit is filed and pursued to a successful outcome, the prevailing party must bear its own attorneys' fees unless some exception applies.  Here, Plaintiff never even filed a lawsuit, let alone one that was pursued to a final judgment in his favor.

Plaintiff's theory is that a shareholder derivative demand letter prompted Syntel to supplement its proxy statement regarding a proposed 2016 Incentive Plan (the full text of which was appended to and part of the proxy statement) in a way that corrected a misleading disclosure about the terms of the Plan; provided new, material information; and thereby conferred a benefit on Syntel's shareholders—a supposed benefit for which Syntel should compensate Plaintiff's counsel.

This theory is fundamentally flawed for several reasons.  First, there is no legal basis for an award of attorney's fees under these circumstances, and none of the exceptions to the American rule apply.  Plaintiff never filed a suit that resulted in a common fund benefiting members of a class, and Plaintiff never filed a derivative proceeding that resulted in a substantial benefit to the corporation. Indeed, Plaintiff asserts that his underlying claim of a false and misleading proxy

1

statement (which was never filed) is direct, not derivative.  Second, the underlying

proxy disclosure claim (had it been brought) would have failed as a matter of law

because the proxy statement was not false and misleading, and the supplemental

disclosure simply reiterated terms of the 2016 Plan that Plaintiff affirmatively

alleges are "express and clear."  As such, Plaintiff's derivative demand did not

confer any benefit on Syntel's shareholders, let alone give rise to a claim for

attorneys' fees.

## FACTS

### A.    The 2016 Proxy

Defendant Syntel, Inc. is a U.S.-based multinational provider of integrated

technology and business services, headquartered in Troy, Michigan.  Plaintiff

Philip Willner is a purported shareholder of Syntel.

In April 2016, Syntel filed a Schedule 14A Definitive Proxy Statement (the

"2016 Proxy" with the Securities and Exchange Commission.  Ex. 1.[1]  Among

other things, the 2016 Proxy sought shareholder approval of a 2016 Incentive Plan

(the "2016 Plan"), which had been approved by Syntel's Board of Directors.  The

2016 Plan was developed in order to replace a then-existing 2006 Amended and

Restated Stock Option and Incentive Plan (the "2006 Plan"), which was

---

[1]  Strikingly, Plaintiff did not attach a copy of the 2016 Proxy to his Complaint
even though it is referenced in, and central to, his claims.  Nevertheless, given
these references and its centrality to the claims, the Court may consider it in this
motion brought under Fed. R. Civ. P. 12(b)(6).

2

terminating by its terms on June 1, 2016.  The 2016 Plan allows Syntel to offer employees and directors various equity-based incentives, including stock options, restricted stock, restricted stock units, performance-based stock awards, incentive awards, and stock appreciation rights.

The 2016 Plan was submitted to the shareholders for approval in accordance with NASDAQ requirements, and to qualify certain awards under the Plan as performance-based compensation under Section 162(m) of the Internal Revenue Code.  Code Section 162(m) imposes a $1 million cap on the amount of compensation expense a public company may deduct for tax purposes with respect to its most highly paid executive officers, but exempts certain performance-based compensation that satisfies certain conditions, including per-participant limitations.

The 2016 Proxy provides a summary description of the 2016 Plan, and also attaches the full text of the 2016 Plan as Appendix A.  The 2016 Proxy expressly states: "The following summary of the principal features of the 2016 Plan is qualified in its entirety by reference to Appendix A to this proxy statement."  Ex. 1, p. 8.

The 2016 Plan includes annual per-participant limits applicable to Section 162(m) Awards.  Ex. 1, A-13.  Specifically, Section 7.3 of the 2016 Plan provides:

> 7.3 Individual Participant Limits.  Subject to adjustment as provided in Section 9.1, **with respect to those Awards which are designated (or deemed designated) by the Committee to be Code Section 162(m) Awards**:

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

(a) no Employee participant in any one fiscal year of the Corporation may be granted:

(i)    Options with respect to more than eight hundred thousand (800,000) shares of Common Stock;

(ii)    Stock Appreciation Rights with respect to more than two hundred thousand (200,000) shares of Common Stock;

(iii)    Restricted Stock Awards with respect to more than two hundred thousand (200,000) shares of Common Stock;

(iv)  Restricted  Stock  Unit  Awards  that  are denominated in shares of Common Stock with respect to more than two hundred thousand (200,000) shares;

(v)    Performance Awards that are denominated in shares of Common Stock with respect to more than two hundred thousand (200,000) shares; or

(vi)   Incentive Awards that are denominated in shares of Common Stock with respect to more than two hundred thousand (200,000) shares.

(b)    The maximum dollar value payable to any Employee Participant in any one fiscal year of the Corporation with respect to Restricted Stock Units, Performance Awards or Incentive Awards that are valued in property other than Common Stock shall be limited to the lesser of five million dollars ($5,000,000) or ten (10) times the Participant's base salary for the fiscal year.

(c)    If an Award is cancelled, the cancelled Award shall continue to be counted towards the applicable limitations set forth above.

Ex. 1, p. A-13. Section 7.3, which expressly pertains to Section 162(m) Awards, is

the only provision in the 2016 Plan containing annual per-participant limits.

4

The summary discussion in the 2016 Proxy discusses these limits in two sections.  First, in the section of the summary entitled "Individual Award Limits," the 2016 Proxy lists the various limits applicable to the different types of awards available under the 2016 Plan.  Ex. 1, p. 11.  Then, in the section entitled "Section 162(m) Awards," the summary states: "To qualify [as Section 162(m) Awards], awards must be granted under the 2016 Plan by a committee consisting solely of two or more 'outside directors'…and satisfy the 2016 Plan's limit on the total number of shares or maximum dollar amount that may be awarded to any one participant during any calendar year."  *Id.*, p. 13.

**B.      The Demand, the Investigation, and the Instant Complaint.**

On May 10, 2016, Plaintiff sent a shareholder derivative demand (the "Demand") to Syntel.  The Demand asserted two claims.  First, Plaintiff alleged that Syntel's Board of Directors had breached its fiduciary duties by granting restricted stock units in excess of the annual limit set forth in the 2006 Plan.  Second, Plaintiff alleged that the 2016 Proxy misrepresented material terms of the 2016 Plan by falsely representing that it restricted the amount of stock awards that the Board could grant to an individual participant during a calendar year when in fact "pursuant to the express and clear terms of the 2016 Plan, each of the per-participant fiscal year limits described in the 2016 Proxy are only applicable for awards that are specifically designated by the Compensation Committee to be

5

subject to Section 162(m)'s rules." Ex. 2, Demand, p. 4. *See also* Compl. ¶ 7. This second claim forms the basis of the attorneys' fee request set forth in the instant Complaint.

The Demand requested that Syntel investigate the claims and take corrective action. Syntel sent a preliminary response to the Demand indicating that it intended to investigate the claims upon proof of stock ownership, and also stated as follows:

> With respect to the concerns that you raise concerning the Proxy Statement, Syntel does not agree that the Proxy Statement is in any way "false," "misleading," or insufficient to advise the shareholders of the information necessary to consider the approval of the new stock plan. The additional disclosure that you are requesting is duplicative of information already provided to shareholders…. Indeed, you admit knowing that the "express and clear terms of the 2016 Plan" specify that Code Section 162(m) applies only to those awards designated by the Compensation Committee to be subject to the requirements of Code Section 162(m) and regulations thereunder. To restate the obvious, Syntel has filed a supplemental disclosure with the SEC reiterating this point so that there can be no question that the awards addressed in the 2016 stock plan address Code Section 162(m) awards, and not any others. While we do not agree that the additional language is necessary or provides any additional information that is not already available to shareholders, Syntel does not object to reiterating this point.

Ex. 3.

The Supplemental Disclosure, filed with the SEC on May 18, 2016,

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

provides:

> This supplement updates the subsection on page 11 of the Proxy Statement captioned "Individual Award Limits" which summarizes the limits on Section 162(m) Awards under the 2016 Plan. As stated in the 2016 Plan attached to the Proxy Statement, the referenced limits apply only to Section 162(m) Awards under the 2016 Plan and not to any other awards. The updated subsection is set forth below:
>
> Individual Section 162(m) Award Limits
>
> The 2016 Plan limits the total Section 162(m) Award grants to any one employee participant in any one fiscal year to: (i) 800,000 shares of Common Stock subject to stock options; (ii) 250,000 shares of Common Stock subject to stock appreciation rights; (iii) 200,000 shares of Common Stock subject to restricted stock awards or restricted stock units; (iv) 200,000 shares of Common Stock subject to performance awards; and (v) 200,000 shares of Common Stock subject to incentive awards. The 2016 Plan further limits the total dollar value of Section 162(m) Awards payable to any one employee participant in any one fiscal year on restricted stock units, performance awards or incentive awards valued in property other than Common Stock is limited to the lesser of $5,000,000 or ten times the employee participant's base salary for the fiscal year.

Ex. 4.

Thereafter, Syntel sought the appointment of a disinterested person to investigate the Demand under M.C.L. 450.1495(2)(c). Oakland County Business Court Judge James Alexander granted Syntel's request and appointed Robert M. Carson as a disinterested person to investigate the demand. Mr. Carson conducted an investigation and determined that neither of the claims asserted in the Demand

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

7

should be pursued.  Syntel informed Plaintiff of Mr. Carson's conclusion, which was as follows:

> As a disinterested person having conducted a reasonable investigation of the claims set forth in the Demand, I have, in good faith, come to the determination that it is not in the best interest of Syntel to pursue the claims in the Demand and that a derivative proceeding based on the Demand is not justified.

Ex. 5.

After receiving this determination, it is notable that Plaintiff's counsel declined to bring a lawsuit against Syntel, despite having forced Syntel to incur the expense associated with the disinterested person's review of the matter.  Instead, Plaintiff's counsel requested attorneys' fees based upon a benefit allegedly conferred on Syntel's shareholders as a result of the Demand.  Syntel rejected Plaintiff's request because it did not agree that any benefit was conferred as a result of the Demand, particularly given that the terms of the 2016 Plan were unambiguous and the Supplemental Disclosure was immaterial as a matter of law. Plaintiff then filed the instant Complaint asserting a single cause of action entitled "Plaintiff's Claim For Attorneys' Fees."

## ARGUMENT

## I.    STANDARD OF REVIEW

A motion under Rule 12(b)(6) tests the sufficiency of a complaint, which "must contain a 'short and plain statement of the claim showing that the pleader is

entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S.Ct. 1937 (2009). "[A] plaintiff's obligation to provide the grounds of…entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; 127 S.Ct. 1955 (2007). "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements[,] do not suffice." *Thielen v. GMAC Mortgage Corp.*, 671 F. Supp. 2d 947, 950-51 (E.D. Mich. 2009) (quoting *Iqbal*, *supra* at 678). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, *supra* 679 (quoting *Twombly*, *supra* at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 678.

## II. THERE IS NO CAUSE OF ACTION FOR AN AWARD OF ATTORNEY'S FEES.

Because jurisdiction is based on diversity of citizenship, state law applies to Plaintiff's claim for attorneys' fees. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1301-02 (W.D. Wash. 2001) (applying state law to common fund case when sitting in diversity); *Pavlidis v. New England Patriots Football Club, Inc.*, 675 F. Supp. 706, 706-07 (D. Mass. 1987) (same). Syntel is a Michigan corporation, and, as

such, Michigan law applies under the internal affairs doctrine. *Davis & Cox v. Summa Corp*., 751 F.2d 1507 (9th Cir. 1985) ("Claims involving 'internal affairs' of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation.").

Plaintiff's Complaint should be dismissed because it is premised on an invented cause of action that does not exist under Michigan law: a free-floating claim for attorneys' fees. Even when litigation is filed and pursued to a successful outcome, the general rule in Michigan is that attorney fees are not recoverable absent authorization by statute, court rule, or contract. *Dessart v. Burak*, 470 Mich. 37, 42; 678 N.W.2d 615 (2004); *In re Clarence W. Temple and Florence A. Temple Marital Trust*, 278 Mich. App. 122, 129; 748 N.W.2d 265 (2008); *Popma v. Auto Club Ins. Ass'n*, 446 Mich. 460, 474; 521 N.W.2d 831, 837 (1994). Here, Plaintiff never filed—let alone prevailed in—any lawsuit whatsoever, and no exception to the American rule applies.

### A.    Plaintiff Is Not Entitled to Attorneys' Fees Under Michigan's Common Fund Doctrine.

Plaintiff relies upon the doctrine that "**representative plaintiffs**…are entitled to an award of attorneys' fees and expenses for producing a benefit to a **represented class**." Compl., ¶ 10 (emphasis added). Michigan law recognizes a variant of this principle, known as the common fund doctrine. This doctrine does not apply here.

10

The common fund doctrine in Michigan is a narrow exception to the American rule, and requires that a litigant obtain or protect a monetary fund for the benefit of a class.  Indeed, the exception "**only applies** when a prevailing party creates or protects a common fund that benefits himself and others." *Nemeth v. Abonmarche Dev.*, 457 Mich. 16, 38 n.11; 576 N.W.2d 641 (1998) (emphasis added); *Popma*, 446 Mich. at 475; *In re Attorney Fees of Kelman, Loria, Downing, Schneider & Simpson*, 406 Mich. 497, 504; 280 N.W.2d 457 (1979) ("The exception is available when a fund is created, preserved or protected.").  As such, when no common fund of money is created or protected, the exception is inapplicable.  *Popma*, 446 Mich. at 475 ("The flaw in plaintiff's argument, however, is that no common fund was created….Thus, the common fund exception is inapplicable.").  *See also Miller v. Citizens Ins. Co.*, 490 Mich. 904, 904; 804 N.W.2d 740 (2011) (reversing Court of Appeals order awarding attorney fees based on common-fund exception because no common fund was created).

Another requirement for an award of fees under the common fund exception in Michigan "is successful maintenance of the suit by plaintiff." *Cicelski v. Sears, Roebuck & Co*., 132 Mich. App. 298, 310; 348 N.W.2d 685 (1984) (holding that "[s]ince in this case there is no recovery, we do not view such a suit as successful, nor do we perceive a direct benefit to the class," and as such the common fund exception did not apply); *Garcia v. Farmers Ins. Exch*., 226 Mich. App. 254, 257;

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

11

573 N.W.2d 627 (1997) (holding that common fund exception inapplicable where a lawsuit was filed but then dismissed without being served because the defendant voluntarily paid benefits without contesting them).

Here, Plaintiff cannot available himself of the common fund exception because he did not obtain or protect a common fund of money benefitting a class. Indeed, he did not even commence a lawsuit, let alone prosecute one to a successful outcome creating a common fund available for distribution to (non-existent) represented class members. With no lawsuit, no successful outcome, and no common monetary fund benefiting a class of beneficiaries, Michigan's common fund doctrine is inapplicable as a matter of law and cannot support Plaintiff's purported cause of action for attorneys' fees.

### B. Plaintiff's Reliance on Federal and Delaware Law Is Inappropriate and Unavailing.

Plaintiff's citation to cases applying the federal law and Delaware law versions of the common fund doctrine is inappropriate and unavailing. As discussed above, Michigan law applies to Plaintiff's claim, and is well-developed on the common fund exception. There is no basis to look to the laws of other jurisdictions, let alone apply them to Plaintiffs' claim.

Regardless, Plaintiff's claim would also be unsuccessful under federal and Delaware law. Plaintiff cites *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395, 90 S. Ct. 616, 627 (1970) (federal law) and *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d

12

1162 (Del. 1988) (Delaware law). These cases expand the "common fund" doctrine beyond how Michigan law narrowly defines it, applying it not only to litigation in which a common monetary fund is obtained for the benefit of a class, but also to shareholder derivative litigation that results in a "substantial benefit" to the corporation, including non-pecuniary disclosure-related benefits. *Mills*, *supra* at 395; *Tandycrafts*, *supra* at 1164-65. Yet these versions of the doctrine require that the plaintiff seeking to recover fees must have filed a lawsuit asserting meritorious claims, and, even if the meritorious lawsuit is not prosecuted to final decision, the alleged corporate benefit must be "substantial" and must be causally related to the lawsuit. *Id.* at 395-96; *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1123 (Del. Ch., 2011) ("To obtain a fee in a mooted case, the plaintiff must show that '(1) the suit was meritorious when filed; (2) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (3) the resulting corporate benefit was causally related to the lawsuit.'").

To be meritorious, the lawsuit must have been able to survive a motion to dismiss on the pleadings. *Chrysler Corp. v. Dann*, 223 A.2d 384, 387 (Del. 1966). For a disclosure claim to be meritorious, and for it to provide a "substantial benefit" supporting a fee award, the supplemental disclosure sought and obtained must be material. *In re Sauer-Danfoss Inc. S'holders Litig.* 65 A.3d at 1127-28

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

("Remedying an immaterial omission through supplemental disclosure does not benefit stockholders and will not support a fee award.").

Given that no lawsuit was ever filed here, Plaintiff's claim for fees would not meet even the most basic threshold requirement under federal and Delaware law. Moreover, as discussed below in Section III of this Brief, the underlying claim (which Plaintiff never filed or litigated) would not have been meritorious because it would have been subject to dismissal on the pleadings: there was no misleading statement or omission in the 2016 Proxy, and the Supplemental Disclosure was immaterial as a matter of law. For these same reasons, the unfiled, unmeritorious lawsuit could not have produced a "substantial benefit" under federal or Delaware law because an immaterial supplemental disclosure cannot support a fee award.[2]

---

[2]   To the extent Plaintiff persists in asserting that an expanded "corporate benefit" doctrine should be applied here, it is also worth noting that Michigan does recognize a statutory version of this fee shifting exception to the American rule through its derivative proceeding statute.  M.C.L. 450.1497.  This provision of the derivative proceeding statute, like the federal and Delaware law versions of the "corporate benefit" doctrine, requires that a derivative proceeding be maintained, and that it result in a "substantial benefit" to the corporation.  As discussed above, Plaintiff's claim fails to meet these basic requirements.  In addition, Plaintiff should not be allowed to rely on a derivative proceeding exception to the American rule when his Complaint affirmatively alleges that his underlying (unfiled, unmeritorious) claim was direct, not derivative.  (Although Syntel disagrees with this allegation, the Court need not address this issue in order to resolve its this motion.)  Moreover, if Plaintiff had commenced a derivative proceeding, it would have been subject to dismissal based on the court-appointed disinterested person's investigation and determination which Plaintiff elected not to challenge.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

## III. EVEN IF THERE WERE A CAUSE OF ACTION FOR ATTORNEY'S FEES, PLAINTIFF COULD NOT HAVE STATED A PLAUSIBLE DISCLOSURE CLAIM.

The purported underlying basis for Plaintiff's claim for an award of attorneys' fees is the theory that the 2016 Proxy was materially false and misleading regarding the per-participant annual award limitations under the terms of the 2016 Plan—**a copy of which was provided as part of the 2016 Proxy**. The allegations in the Complaint do not state a plausible claim on this basis because Plaintiff has not (and could not have) identified any misstatement or omission in the 2016 Proxy, and has not (and could not have) established materiality or causation. As such, if Plaintiff had filed a lawsuit asserting the underlying claim that forms the basis for the attorneys' fee request, that lawsuit would have been subject to dismissal on the pleadings,[3] and there would be no basis in law, statutory or otherwise, for an award of attorneys' fees.

"[I]t is inherent in disclosure cases that the misstated or omitted facts be identified and that the pleading not be merely conclusory." *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 140 (Del. 1997). Moreover, simply identifying an alleged misstatement or omission is not enough to state a claim. Rather, "[a] claim based on disclosure violations must provide some basis for a

---

[3] The claim also would have been subject to dismissal based on the court-appointed disinterested person's investigation and determination as discussed infra in footnote 2.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

court to infer that the alleged violations were material," including "why they meet the materiality standard and how the omission caused injury." *Loudon*, *supra* at 141. A fact is material if it would "significantly alter the total mix of information already provided" such that "there is a substantial likelihood that a reasonable stockholder would consider it important in deciding how to vote." *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del. 2000); *Loudon*, *supra* at 143. A "plaintiff must demonstrate a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable stockholder." *Loudon*, *supra*.

Plaintiff cannot identify any material misstatement or omission in the 2016 Proxy regarding the terms of the 2016 Plan in light of the fact that the full text of the 2016 Plan is included in, and part of, the 2016 Proxy itself. Indeed, "clear and prominent inclusion of the text [of a proposed contract] in an appendix" to a proxy statement—"the entirety of which, it must be presumed, a reasonable shareholder had read before voting his proxy"—"guards against any misleading impact of the narrative description…." *Unicorp Fin. Corp. v. First Union Real Estate Equity & Mortg. Inv.*, 515 F. Supp. 249, 260 (S.D. Ohio 1981)..

The 2016 Proxy sought shareholder approval of the 2016 Plan. Although the 2016 Proxy included a summary description of the 2016 Plan, it also attached as Appendix A to the 2016 Proxy a copy of the full text of the 2016 Plan as proposed

16

to be adopted, and expressly stated: "The following summary of the principal features of the 2016 Plan **is qualified in its entirety by reference to Appendix A to this proxy statement**."  Ex. 1, p. 8 (emphasis added).

Plaintiff claims that 2016 Proxy "affirmatively and unequivocally misrepresented material terms of the 2016 Plan" because it allegedly "represented that the 2016 Plan imposed an absolute limit on the number of awards that may be granted to an individual during any fiscal year…."  Compl. ¶ 23.  The 2016 Proxy discusses the 2016 Plan limits in two sections of the summary, only one of which Plaintiff cites in his Complaint.  In the section of the summary entitled "Individual Award Limits," the 2016 Proxy lists the various limits applicable to the different types of awards available under the 2016 Plan.  Ex. 1, p. 11.  Nowhere does the 2016 Proxy state that these limits are "absolute" or apply to all awards granted under the 2016 Plan.

Plaintiff neglects to mention that later in the 2016 Proxy's summary description of the 2016 Plan there is a section entitled "Section 162(m) Awards," which states: "To qualify [as Section 162(m) Awards], awards must be granted under the 2016 Plan by a committee consisting solely of two or more 'outside directors'…and satisfy the 2016 Plan's limit on the total number of shares or maximum dollar amount that may be awarded to any one participant during any calendar year."  Ex. 1, p. 13.  If the limits were absolute and applicable to all

17

awards, there would be no need to specify, as the 2016 Proxy does, that satisfaction of the limits is necessary to qualify an award as a Section 162(m) award.

The 2016 Proxy is consistent with the terms of the 2016 Plan, attached as Appendix A to the 2016 Proxy.  Article 7 of the 2016 Plan relates to Section 162(m) Awards.  Section 7.3 contains the annual award limits, unambiguously stating:

> 7.3 Individual Participant Limits.  Subject to adjustment as provided in Section 9.1, **with respect to those Awards which are designated (or deemed designated) by the Committee to be Code Section 162(m) Awards**:
>
> (a) no Employee participant in any one fiscal year of the Corporation may be granted:
>
> (i)     Options with respect to more than eight hundred thousand (800,000) shares of Common Stock;
>
> (ii)    Stock Appreciation Rights with respect to more than two hundred thousand (200,000) shares of Common Stock;
>
> (iii)   Restricted Stock Awards with respect to more than two hundred thousand (200,000) shares of Common Stock;
>
> (iv) Restricted Stock Unit Awards that are denominated in shares of Common Stock with respect to more than two hundred thousand (200,000) shares;
>
> (v)    Performance Awards that are denominated in shares of Common Stock with respect to more than two hundred thousand (200,000) shares; or
>
> (vi)   Incentive Awards that are denominated in shares of Common Stock with respect to more than two hundred thousand (200,000) shares.

18

> (b)   The maximum dollar value payable to any Employee Participant in any one fiscal year of the Corporation with respect to Restricted Stock Units, Performance Awards or Incentive Awards that are valued in property other than Common Stock shall be limited to the lesser of five million dollars ($5,000,000) or ten (10) times the Participant's base salary for the fiscal year.
>
> (c)   If an Award is cancelled, the cancelled Award shall continue to be counted towards the applicable limitations set forth above.

Ex. 1, p. A-13.

Section 7.3, which expressly pertains to Section 162(m) Awards, is the only place in the 2016 Plan in which reference is made to any annual limits.  As such, it is unambiguous in the 2016 Plan, and the 2016 Proxy in which it is contained, that the limits apply only to Section 162(m) Awards and not to any other awards.

Although Syntel filed a Supplemental Disclosure amending the 2016 Proxy's summary description of the limits to insert "Section 162(m) Award" into the description of the limits, this Supplemental Disclosure simply reiterated the obvious, unambiguous provision of the 2016 Plan.  Ex. 4.  Given that the 2016 Proxy included the full text of the 2016 Plan as a prominent appendix, the Supplemental Disclosure did not provide any information in addition to that which was already available to the shareholders of Syntel.  As such, the Supplemental Disclosure did not add anything to the total mix of information and cannot be material as a matter of law.

19

Plaintiff's own allegations demonstrate this lack of materiality as well as any argument Defendant could make.  Plaintiff alleges: "Pursuant to the express and clear terms of the 2016 Plan, each of the per-participant annual limits described in the 2016 Proxy were only applicable to awards that the Compensation Committee specifically designated as subject to Section 162(m)'s rules and regulations, i.e., awards the Compensation Committee specifically intends to be eligible for the tax deduction."  Compl. ¶ 27.  These "express and clear terms" of the 2016 Plan were always available to Plaintiff as part of the 2016 Proxy.  Indeed, Plaintiff makes this allegation based on the 2016 Plan itself, not the Supplemental Disclosure.

As such, there was nothing ambiguous about the 2016 Plan, nothing materially misleading about the 2016 Proxy that attached and disclosed the full text of the 2016 Plan verbatim, and nothing material added to the total mix of information by the Supplemental Disclosure.  In short, the Supplemental Disclosure did not cure a misleading disclosure or provide any new, material information, and thus cannot have conferred any benefit on Plaintiff or other Syntel shareholders, let alone the corporation as a whole, that could justify an award of attorneys' fees under any cognizable theory.

## CONCLUSION

For these reasons, Defendant respectfully requests that this Court grant its Motion and enter judgment in its favor dismissing the Complaint with prejudice

20

and grant any other relief, including costs and attorneys' fees, that this Court deems appropriate.

DYKEMA GOSSETT PLLC


By: */s/Andrew J. Kolozsvary*
    Lori McAllister (P39501)
    Andrew J. Kolozsvary (P68885)
    Attorneys for Defendant
    400 Renaissance Center
    Detroit, MI 48234
    313-568-5406
    lmcallister@dykema.com
    akolozsvary@dykema.com

Date: November 18, 2016

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2016, the foregoing paper was electronically filed with the Clerk of the Court using the ECF system, which will send notice to all e-filing participants.

DYKEMA GOSSETT PLLC

By: */s/Andrew J. Kolozsvary*
    Lori McAllister (P39501)
    Andrew J. Kolozsvary (P68885)
    Attorneys for Defendant
    400 Renaissance Center
    Detroit, MI 48234
    313-568-5406
    lmcallister@dykema.com
    akolozsvary@dykema.com

4823-6340-4603.7
076623\000128