UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP WILLNER,

        Plaintiff,                            Case No. 16-13574
                                                    Hon. Matthew F. Leitman

v.

SYNTEL, INC.,

        Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF #8)

In 2016, Defendant Syntel, Inc. asked its shareholders to approve a new incentive compensation plan for its officers, directors, and employees. In connection with that request, Syntel issued a proxy statement describing the proposed plan. Plaintiff Philip Willner, a Syntel shareholder, and his lawyer compared the proxy statement to the terms of the compensation plan and concluded that the proxy mischaracterized the plan. Willner's lawyer sent a letter to Syntel demanding that it supplement the proxy statement with revised disclosures, and Syntel did so (even though Syntel disagreed with Willner's claim that the proxy was inaccurate). In this action, Willner insists that his counsel's work conferred a substantial benefit on Sytnel's shareholders, and he claims that Syntel must pay him more than $75,000 in attorney fees for that benefit. But Michigan law does not permit such a fee award under these circumstances. Therefore, the Court **DISMISSES** Willner's Complaint.

1

# I

## A

Syntel is a publicly-traded "global provider of digital transformation, information technology, and knowledge process outsourcing services to Global 2000 companies." (Compl. at ¶2, ECF #1 at Pg. ID 2.) It is headquartered in Troy, Michigan. (*See id.*) Willner is a Syntel shareholder and a citizen of New York. (*See id.* at ¶1.)

At Syntel's 2016 annual meeting, the company asked its shareholders to approve a new incentive compensation plan. (*See id.* at ¶7, ECF #1 at Pg. ID 2.) Prior to that meeting, Syntel described the compensation plan – and its revised limits on executive compensation – in a Schedule 14A Definitive Proxy Statement (the "Proxy"). (*See id.* at Pg. ID 3.) It filed the Proxy with the Securities and Exchange Commission (the "SEC") and issued it to shareholders. (*See id.*)

Willner compared the Proxy against the compensation plan. He concluded that the Proxy "falsely represented that the [compensation plan] restricted the amount of stock awards that [Syntel's Board of Directors] could grant to an individual participant during a calendar year." (*Id.* at ¶7, ECF #1 at Pg. ID 3.) According to Willner, the Proxy represented that the compensation plan authorized Syntel's Board to award participants "no more than 1,850,000 shares" of stock per year, but under the actual terms of the plan, that "limit[] … [was] only applicable to awards that [Syntel's] Compensation Committee specifically designate[d] as subject" to Section 162(m) of the Tax Code. (*Id.* at ¶27, ECF #1 at Pg. ID 8.) Simply put, Willner contended that the

Proxy falsely told shareholders that the compensation plan contained "participant annual limits" on stock awards. (*Id.* at Pg. ID 8-9.) Willner believed that "[a]s a result of the Board's affirmative misrepresentations … Syntel shareholders were [] misled about the material terms of the [compensation plan] that they were being asked to approve." (*Id.* at ¶35, ECF #1 at Pg. ID 10.)

On May 10, 2016, Willner's counsel sent a shareholder demand letter to Syntel (the "Demand Letter"). (*See* ECF #1-1.) In the Demand Letter, Willner's attorney alleged that the Proxy "misrepresent[ed] material terms of the [compensation plan]" because it mischaracterized the plan in the manner described above. (*Id.* at Pg. ID 16; *see also* Compl. at ¶7, ECF #1 at Pg. ID 2-3.) Among other things, Willner "demanded that the Board issue a supplemental disclosure to correct the [] Proxy before shareholders voted [on the compensation plan] at the 2016 Annual Meeting." (Compl. at ¶37, ECF #1 at Pg. ID 11.)

Syntel reviewed the Demand Letter and disagreed with Willner's contention that the Proxy materially mischaracterized the compensation plan. (*See* ECF #1-3 at Pg. ID 23-24.) Syntel nonetheless decided to file a supplemental Schedule 14A Proxy Statement with the SEC (the "Supplemental Proxy"). (*See* Compl. at ¶38, ECF #1 at Pg. ID 11.) In the Supplemental Proxy, Syntel stated that "the previously-disclosed annual 'limit' [on stock awards] would 'apply only to Section 162(m) Awards under the [compensation plan] and not to any other awards.'" (*Id.* at ¶39, ECF #1 at Pg. ID 11, quoting the Supplemental Proxy; internal emphasis removed.)

Syntel's shareholders approved the compensation plan at the company's 2016 annual meeting. (*See id.* at ¶41, ECF #1 at Pg. ID 12.) Willner thereafter sought "a reasonable attorneys' fee" from Syntel. (*Id.* at ¶11, ECF #1 at Pg. ID 4.) Syntel declined to pay Willner any fee. (*See id.*)

**B**

On October 16, 2016, Willner filed this action. Willner's sole count seeks more than $75,000 in legal fees and expenses in connection with the Demand Letter. (*See id.* at ¶¶ 3, 46, ECF #1 at Pg. ID 2, 13.) Willner claims that he is entitled to his fees under "the common or corporate benefit doctrine" – a doctrine that authorizes an award of attorney fees and expenses to "representative plaintiffs and their counsel … for producing a benefit to a represented class." (*Id.* at ¶10, ECF #1 at Pg. ID 4.) Willner says that the doctrine applies here because his efforts benefitted Syntel's shareholders. In Willner's words, he "conferred [a benefit] on [Syntel's] shareholders by means of a pre-suit demand that caused corrective action to be taken and enabled shareholders to render a fully-informed vote on [the compensation plan]." (*Id*. at ¶6, ECF #1 at Pg. ID 2; *see also id.* at ¶10, ECF #1 at Pg. ID 3, in which Willner claims that he is entitled to fees based on the "substantial benefit he conferred on the [Syntel's] shareholders.") Willner maintains that "[w]ere it not for his counsel's investigation and review of [Syntel's] voluminous SEC filings, and the resulting Demand [Letter], shareholders would have been deprived of their fundamental right to an informed vote at the 2016 Annual Meeting." (*Id.* at ¶10, ECF #1 at Pg. ID 4.)

4

Syntel filed a motion to dismiss Willner's claim for attorney fees on November 18, 2016. (*See* ECF #8.)  The Court held a hearing on Syntel's motion on April 12, 2017.

## II

## A

Syntel moves to dismiss Willner's claim for attorney fees under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.* Twombly, 550 U.S. 544, 555 (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id*.  When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).  "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.  A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B**

The Court has subject matter jurisdiction over this action based upon the parties' diversity of citizenship and the amount in controversy. *See* 28 U.S.C. 1332(a)(1). In a diversity action like this one, the Court must apply Michigan law as determined by the Michigan Supreme Court. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

Willner does not dispute that Michigan law governs his claim for attorney fees, but he nonetheless urges the Court to consult Delaware law in resolving his claim. Willner argues that "on unresolved corporate law issues such as [the one before the Court], 'Michigan courts commonly refer to Delaware law….'" (Willner Resp. Br., ECF #11 at Pg. ID 246 quoting *Consumers Power Co. Deriv. Litig.*, 132 F.R.D. 455, 461 (E.D. Mich. 1990)).

For several reasons, the Court declines Willner's invitation to rely on Delaware law. First, the issues before this Court are not "unresolved" under Michigan law. On the contrary, as described below, there is a substantial body of Michigan case law addressing and resolving the questions presented. Second, that body of law is inconsistent with the Delaware rule cited by Willner. Finally, the question before the Court – whether Willner's fee request falls within an exception to the common law rule that attorney fees are not ordinarily recoverable – is unlike the questions of corporate law on which courts applying Michigan law have looked to Delaware law. *See, e.g., Plaza Sec. Co. v Fruehauf Corp.*, 643 F.Supp. 1535, 1543 (E.D. Mich. 1986) (looking to Delaware law for guidance concerning scope of directors' fiduciary duties). Willner

has not cited any decisions in which Michigan courts have treated Delaware law as especially persuasive in fee disputes like the one before the Court. The Court need not look any further than Michigan common and statutory law to resolve the questions presented here.

## III

### A

"For better or worse, the common-law tradition in Michigan follows what is sometimes called the 'American Rule' regarding attorney fees." *Popma v. Auto Club Ins. Ass'n.*, 521 N.W.2d 831, 837 (Mich. 1994). "Under this rule, attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides to the contrary." *Id*. Exceptions to this rule "are construed narrowly" under Michigan law. *Burnside v. State Farm Fire and Cas. Co.*, 528 N.W.2d 749, 751 (Mich. App. 1995).[1]

### B

One "generally-recognized exception[] to the common-law prohibition against awarding attorney fees" is the so-called "common fund" exception. *Pompa*, 521 N.W.2d at 838. Under this exception, a court may award attorney fees "out of a fund

---

[1] *See also Association Research and Development Corp. v. CAN Financial Corp.*, 333 N.W.2d 206, 209 (Mich. App. 1983) (holding that jury award of attorney fees was "improper" because "[n]o special circumstances [warranting award] existed," and noting that "only in *unusual* circumstances" should courts deviate from the general rule prohibiting the award of fees) (emphasis added).

under the control of [the] court … to persons who have been successful in a suit concerning it, resulting in a benefit to all interested in the fund….” *In re Attorneys Fees of Kelman, Loria, Downing, Schneider & Simpson*, 280 N.W.2d 457, 460 (Mich. 1979).[2] This exception “is based on equitable principles: ‘[t]o allow the others to obtain the full benefit from the plaintiff’s efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff’s expense.” *Abston v. Aetna Cas. & Sur. Co*., 346 N.W.2d 63, 65 (Mich. App. 1983) (quoting *In re Kelman*, 280 N.W.2d at 460)).

“While [the common fund] exception is recognized in Michigan, it generally only applies when a prevailing party creates or protects a common fund that benefits itself as well as others.” *Popma,* 521 N.W.2d at 838 (citing *In re Kelman,* 280 N.W.2d at 460). And the prevailing party must create the fund through *litigation* – through the “successful” prosecution of “a suit.” *In re Kelman*, 280 N.W.2d at 460 (quoting *Sant v. Perronville Shingle Co*., 146 N.W. 212, 217-18 (Mich. 1914)). Indeed, “one of the requisites for a fee award” under the common fund exception “is successful maintenance of the suit by the plaintiff.” *Cicelski v. Sears, Roebuck & Co.,* 348 N.W.2d 685, 692 (Mich. App. 1984).

---

[2] For ease of reference, the Court will refer to this decision as “*In re Kelman*.”

# C

Some courts have recognized an additional exception to the American Rule known as the "common or substantial benefit" exception. This exception "grew out of and is closely related to the common fund exception." 10 *Moore's Federal Practice 3d* (2017 ed.) §54.171[2][b][i]. This exception authorizes a court to award attorney fees where a party "successfully maintain[s] a suit" that substantially "benefits a group of others in the same manner as himself," even if the "suit" does not result in the creation of a common fund. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970). "Like the common fund exception, [the common or substantial benefit] exception is based on the equitable notion that persons benefitting from a suit should pay their proportionate share of the cost of the litigation." 10 *Moore's Federal Practice 3d* at §54.171[2][b][iii].

As construed by the United States Supreme Court (as a matter of federal law), the common or substantial benefit exception allows a shareholder to recover his attorney fees from a corporation where his litigation efforts confer a benefit upon the corporation's shareholders. In *Mills*, for instance, the Supreme Court held that a corporation could be required to pay the attorney fees of a shareholder who obtained a court order requiring the corporation to correct a misrepresentation in a proxy statement. *See Mills*, 396 U.S. at 396-97. The Supreme Court explained that the trial court could

"assess fees against all of the shareholders [who benefitted from the corrected proxy statement] *through an award against the corporation*." *Id.* at 395 (emphasis added).[3]

The Delaware Chancery Court has arguably taken the common or substantial benefit exception one step further. That court has suggested that a court may require a corporation to pay a shareholder-plaintiff's attorney fees where the shareholder's demand letter alone confers a benefit on the corporation's shareholders. For example, in *Raul v. Astoria Fin. Corp.*, 2014 WL 2795312, at **1, 7-8 (Del. Ch. 2014), that court suggested that a shareholder could recover his attorney fees from a corporation if (1) the shareholder's demand letter presented to the corporation a meritorious claim concerning the insufficiency of certain disclosures filed with the SEC and (2) the corporation corrected the disclosures in response to the demand. Thus, at least in the Delaware Chancery Court, a shareholder-plaintiff whose demand letter induces a corporation to correct a materially misleading proxy statement may be able to recover fees from the issuing corporation – even without filing a civil action challenging the proxy.[4]

_____

[3] *See also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-95 (6th Cir. 1974) (affirming order requiring a corporate defendant to pay a shareholder-plaintiff's attorney fees where the plaintiff's civil action led the corporation to amend a proxy statement issued in advance of an important shareholder vote).

[4] It does not appear that the Delaware Supreme Court has ever adopted this rule. The leading Delaware Supreme Court decision addressing the common or substantial benefit exception is *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162 (Del. 1989). The court in *Tandycrafts* linked the common or substantial benefit exception to benefits obtained *through litigation. See id.* at 1163 (holding that "under certain circumstances, counsel fees may be awarded to an individual shareholder *whose*

**IV**

If and to the extent that the common or substantial benefit exception to the American Rule exists under Michigan law, it is narrower than the versions of that exception recognized under the federal and Delaware law described above.  Indeed, the leading decisions of the Michigan Supreme Court concerning the exception make clear that it does not allow a shareholder to recover attorney fees from a corporation where he has conferred a benefit upon the corporation's shareholders (rather than upon the corporation itself).  Moreover, a second line of cases establishes that the exception does not authorize an award of fees for a benefit conferred through a demand letter alone (i.e., for a benefit conferred in the absence of litigation).

**A**

The Michigan Supreme Court's view of the common or substantial benefit exception is set forth in two decisions in the same case: *Merkel v. Long*, 125 N.W.2d 284 (Mich. 1963) (hereinafter, "*Merkel I*"), rev'd on rehearing in *Merkel v. Long*, 134 N.W.2d 179 (Mich. 1965) (hereinafter, "*Merkel II*").  In the definitive *Merkel II* decision, the Michigan Supreme Court rejected a claim for fees under this exception. As described below, *Merkel II* makes clear that a shareholder may not recover his legal

---

*litigation effort* confer[red] a benefit upon the corporation, or its shareholders, notwithstanding the absence of a class or derivative component") (emphasis added). Thus, it may not be firmly established under Delaware law that the common or substantial benefit exception authorizes a fee award to a shareholder based upon benefits conferred through a demand letter alone.

fees from a corporation where he confers a benefit upon the corporation's shareholders (rather than upon the corporation itself).

*Merkel II* adopted the analysis set forth by Justice Theodore Souris in his Opinion in *Merkel I*. Thus, a detailed analysis of the two *Merkel* decisions is essential.

The *Merkel* cases arose out of proceedings under Michigan's "so-called Dodge Act." *Merkel I*, 125 N.W.2d at 285 (Opinion of Sharp, C.J.). The Dodge Act created a procedure under Michigan law for parties to obtain, among other things, judicial sanction for agreements related to the interpretation and administration of wills and trusts. The Dodge Act proceedings in *Merkel* ended with the trial court approving "an agreement that resolve[d] an alleged ambiguity" in a will and related trust documents. *Id*. at 290 (Opinion of Souris, J.).

After the trial court in *Merkel* approved the agreement, the attorneys who represented beneficiaries under the trusts petitioned the court to award them attorney fees to be paid out of the corpus of the trusts. The attorneys argued that they were entitled to such a fee award "on the theory that the services rendered and monies [they] expended … operated to the benefit of all parties found to have an interest in the trusts…." *Id.* at 286 (Opinion of Sharp, C.J.). The trustees of the trusts opposed the fee requests and filed motions to dismiss the fee petitions. The trustees argued "that as a legal proposition the payments requested could not properly be made from estate funds." *Id.* at 285-86. The trial court denied the trustees' motions to dismiss, and the trustees appealed to the Michigan Supreme Court. In *Merkel I*, the Michigan Supreme

Court – which then consisted of eight Justices – split 4-4, thereby affirming the trial court's refusal to dismiss the fee petitions by that equally divided vote.

Chief Justice Sharp wrote for the four justices in *Merkel I* who voted to allow the fee petitions to proceed. The Chief Justice explained that it "is generally recognized that under appropriate circumstances parties realizing a common benefit out of proceedings taken to establish their rights may be required by equity to contribute to the payment of compensation for services so rendered and expenses incurred." *Id*. at 286. The Chief Justice determined that under this principle – which he gleaned from a survey of several state and federal decisions – the requested fees could be paid from the corpus of the trusts because the trusts' beneficiaries received a benefit from the attorneys' efforts. *See id*. at 287-90.

Justice Souris sharply disagreed in an Opinion he wrote for himself and three other members of the court. Justice Souris said that "there is neither statutory authority nor case precedent in this State to support" the fee award requested by the beneficiaries' attorneys. *Id*. at 291 (Souris, J.). In a critical passage of Justice Souris' Opinion, he explained that a court may order attorney fees to be paid out of a fund or trust *only* where the legal services directly benefit the fund/trust, not where the services benefit those who have an interest in the fund/trust:

> *There is one circumstance, however, in which courts of chancery sometimes have drawn upon their reservoir of inherent powers to award reasonable expenses to a party in litigation.* In those rare cases when a fiduciary charged with responsibility for a fund beneficially owned by others abuses

> his trust, neglects the fund or somehow is incapacitated from acting in its behalf and a beneficiary, or perhaps a creditor, steps forth and institutes derivative litigation *for the benefit of the fund* in the place and stead of the fiduciary, such plaintiff's reasonable expenses sometimes are ordered reimbursed from the fund for the benefit of which he has acted. *The theory upon which reasonable expenses of derivative litigation are ordered paid from the fund is that the objectives of litigation are for the primary benefit of the fund itself, as distinguished from its beneficiaries' interests therein, and, therefore, the fund equitably should bear the costs of such litigation....*

*Id.* at 291 (Souris, J.) (first and third emphasis added; second emphasis in original).

Justice Souris further stressed that "our own cases … emphasize that the sole basis for such an allowance of litigation expenses, absent statutory authority, is *the direct benefit accruing to the fund involved as distinguished from any benefit which might incidentally flow to those who normally would participate in the fund*." *Id*. at 293 (emphasis added).

Justice Souris then highlighted the Michigan Supreme Court's earlier decision in *Sant*, *supra*, as an example of how this principle works in the context of shareholder litigation. In *Sant*, minority shareholders of a corporation prevailed in a derivative action, and the litigation resulted in a substantial payment to the corporation. The Michigan Supreme Court held that the trial court properly required the corporation to pay the shareholders' attorney fees because "[t]he plaintiffs were successful in recovering *for the corporation* substantial sums…." *Sant*, 146 N.W. at 217-18 (emphasis added).

In *Merkel I*, Justice Souris stressed that the "emphasis in *Sant* was on the *benefit to the corporation and not to its stockholders individually.*" *Merkel I*, 125 N.W.2d at 294 (Souris, J.) (emphasis added). Justice Souris underscored that "[t]he plaintiffs recovered their attorney fees in *Sant because* the corporation *as an entity* had been benefitted by the litigation…." *Id.* (emphasis added). He then repeated that "the fact of the benefit *to the corporation* in *Sant … control[led]* the decision whether plaintiffs' litigation expenses were to be reimbursed." *Id.* (emphasis added).

Justice Souris then applied the principle from *Sant* to the attorney fee claim in *Merkel.* He concluded that the beneficiaries' attorneys were not entitled to a fee award because their legal work did not directly "benefit the trusts themselves, as distinguished from some or even all of their beneficiaries." *Id.* at 292. Justice Souris concluded the trial court should have dismissed the fee petitions.

The even split in *Merkel I* created uncertainty with respect to the existence and scope of the common or substantial benefit exception in Michigan. If the Chief Justice's Opinion had "become an authoritative statement of the law, Michigan would have adopted a broad common 'benefit' exception…." Lloyd C. Anderson, *Equitable Power to Award Attorney's Fees: The Seductive Appeal of 'Benefit*, 48 S.D. L. Rev. 217, 237 (2003) (hereinafter, "*Equitable Power*"). But the Chief Justice's view "did not become the law." *Id.* Instead, "[w]hat did become the law was the view of Justice Souris." *Id.*

That happened when the Michigan Supreme Court agreed to rehear *Merkel I* and issued a new decision, *Merkel II*, in 1965. *Merkel II* broke the court's earlier deadlock.

It was heard before seven Justices, and Justice Souris wrote the Opinion of the Court for a four-justice majority.[5] Justice Souris reiterated his view from *Merkel I* that "absent any benefit to the trusts as such," the trusts could not be compelled to pay the attorney fees incurred by the beneficiaries. *Merkel II*, 134 N.W.2d at 182-83. And Justice Souris squarely rejected the argument (made by the dissenting justices) that requiring the beneficiaries to pay their own fees in proceedings that benefitted them was somehow "inequitable." *Id.* at 183. He emphasized that "those parties who engaged counsel to initiate this proceeding would and should satisfy their individually contracted obligations for attorney fees from their own private funds, as do other private litigants…." *Id.*

Under Justice Souris' approach, adopted by the Michigan Supreme Court in *Merkel II*, a court may not require a corporation to pay fees for a benefit conferred on its shareholders (rather than upon the corporation itself). As noted above, Justice Souris stressed that the "*sole basis* for such an allowance of litigation expenses, absent statutory authority, is *the direct benefit accruing to the fund involved as distinguished from any benefit which might incidentally flow to those who normally would participate in the fund.*" *Merkel I*, 125 N.W.2d at 293 (emphasis added). While Justice Souris was addressing a fee request made by trust beneficiaries, his extensive reliance on *Sant* made

---

[5] Justice Kelly did not participate in the decision. *See Merkel II*, 134 N.W.2d at 219. Thus, Justice Souris and his three concurring Justices represented the majority of the court.

clear that this same principle applies in the context of a plaintiff-shareholder's fee request. Under Justice Souris' approach and *Merkel II*, then, a court may not order a corporation to pay a shareholder's attorney fees unless the legal work that generated the fees resulted in a *direct benefit to the corporation*.

**B**

The Court is separately persuaded by two sources of Michigan law that a shareholder may recover his attorney fees under the common or substantial benefit exception only if he has conferred a benefit through litigation. The first source is the line of Michigan Supreme Court decisions concerning the common fund exception. These decisions inform the Court's analysis of the common or substantial benefit exception because, as noted above, that exception "grew out of, and is closely related to," the common fund exception. 10 *Moore's Federal Practice 3d* at §54.171[2][b][i].

The Michigan Supreme Court has consistently linked the common fund exception to successful *litigation*. *See, e.g., In Re Kelman*, 280 N.W.2d at 503 (quoting *Mills*, 396 U.S. at 391-92) (common fund exception applies "where a plaintiff has successfully maintained a suit"); *Sant*, 146 N.W. at 217-18 (same); *Popma*, 521 N.W.2d at 838 (common fund exception authorizes fee award to "a prevailing party"); *Nemeth v. Abonmarche Dev. Co.*, 576 N.W.2d 641, 651 n.11 (1998) (same). Likewise, the Michigan Court of Appeals has explained that "one of the *requisites* for a fee award [under the common fund exception] is *successful maintenance of suit* by plaintiff." *Cicelski*, 348 N.W.2d at 692 (emphasis added). The Court has not found any Michigan

decisions holding (or even suggesting) that the common fund exception applies outside of the litigation context.

Given the close relationship between the common fund exception and the common or substantial benefit exception, Michigan courts would likely limit the latter exception to benefits conferred through litigation, just as they have done with the former. Indeed, Michigan courts construe all exceptions to the American Rule "narrowly," *Burnside*, 528 N.W.2d at 751, and there is no reason to believe that they would broaden the common or substantial benefit exception well beyond the common fund exception by allowing a recovery for a benefit conferred without litigation.

In addition, Michigan's statutes concerning shareholder derivative proceedings further persuade the Court that a shareholder may recover fees under the common or substantial benefit exception, if at all, only where the shareholder confers the benefit through *litigation*. These statutes contemplate that shareholders may serve demand letters on corporations, *see, e.g.*, Mich. Comp. Laws § 450.1493, but the statutes do not authorize an award of attorney fees for a benefit that results from a demand letter. Instead, the statutes authorize Michigan courts to award attorney fees *only* where a shareholder has prosecuted a derivative "*proceeding* [that] has resulted in a substantial benefit to the corporation," Mich. Comp. Laws § 450.1497(b) (emphasis added), and the statutes further define a "proceeding" as "a *civil suit*." Mich. Comp. Laws § 450.1491a (emphasis added). Thus, to the extent the Michigan Legislature has recognized the common or substantial benefit exception, it has limited that exception to

benefits conferred through litigation. Applying the exception to the demand letter context would be in tension with the Michigan Legislature's considered judgment regarding the proper scope of the exception. The Court declines to create that tension.

## V

The Michigan law concerning the common or substantial benefit exception set forth above is fatal to Willner's claim for attorney fees in two respects.

## A

First, Justice Souris' approach to the common or substantial benefit exception, as adopted in *Merkel II,* bars this Court from granting Willner's claim for attorney fees because, as Willner insists, his demand letter conferred a primary and direct benefit upon Syntel's "*shareholders*" (Compl. at ¶¶ 6, 10, ECF #1 at Pg. ID 3-4; emphasis added), not upon Syntel. At the hearing before the Court, Willner offered three arguments as to why his fee request survives *Merkel II*, but the Court rejects those arguments.

Willner initially contended that *Merkel II* did not adopt Justice Souris' approach from *Merkel I.* Willner argued that, instead, *Merkel II* did only two things: it recognized the broad equitable powers of Michigan courts to award attorney fees and concluded only that there was nothing inequitable about denying fees on the specific circumstances of that case. As support for this argument, Willner cited Justice Souris' statement in *Merkel II* that he "agree[d]" that "to avoid an 'inequitable result,' equity would have

the inherent power to require payment of [a beneficiary's] fees out of the funds of [a] trust[]." *Merkel II*, 134 N.W.2d at 183.

However, the language from *Merkel II* cited by Willner was "dicta" because the requested "award of attorneys' fees was denied." *Petition of State Farm Mutual Auto. Ins. Co.*, 212 N.W.2d 821, 824-25 (Mich. App. 1973) (describing this precise language from *Merkel II*). Indeed, Willner has not cited, and this Court has not found, any post-*Merkel II* Michigan decisions holding (or even suggesting) that Michigan courts have broad equitable powers to award attorney fees in order to avoid inequitable results. Nor has Willner cited any post-*Merkel II* decisions affirming an award of attorney fees entered pursuant to such powers. And the post-*Merkel II* decisions cited above in section IV(B) – delineating strict requirements for the common fund exception and highlighting that exceptions to the American Rule are narrowly construed under Michigan law – confirm that *Merkel II* did not establish that Michigan courts have wide-ranging equitable powers to award fees.

Moreover, as explained above, Justice Souris' Opinion for the Court in *Merkel II* incorporated and rested upon his core assertion from *Merkel I:* that a fee award against a trust is not permitted "absent any benefit *to the trust[] as such*." *Merkel II*, 134 N.W.2d at 182-83 (emphasis added). And Justice Souris' Opinion in *Merkel II* was joined by the same three Justices who joined his Opinion in *Merkel I*. For these reasons, scholars have concluded – and this Court agrees – that Justice Souris' approach from *Merkel I* "did become the law" in *Merkel II*. *Equitable Power*, 48 S.D.L.Rev. at 237.

Willner next argued that Michigan law would follow the federal rule described above which allows a trial court to "assess fees against all of the shareholders *through an award against the corporation*." *Mills*, 396 U.S. at 395 (emphasis added). But the Souris approach to fee awards, as explained in *Merkel I* and adopted in *Merkel II*, is not consistent with the federal rule. Justice Souris stressed that requiring a corporation to pay shareholders' attorney fees is permissible *solely* where the benefits of litigation flow "*to the corporation and not to its stockholders individually*." *Merkel I*, 125 N.W.2d at 294-95 (Souris, J.) (describing the earlier decision in *Sant*) (emphasis added). Justice Souris further emphasized that the "fact of benefit to the corporation … *controls* [the] decision whether [a shareholder's] litigation expenses are to be reimbursed" by the corporation." *Id*. (emphasis added). Simply put, Justice Souris' approach draws a bright line between corporations and shareholders and between benefits to each, and, accordingly, that approach does not allow a court to assess fees against the *shareholders* through an award *against the corporation*. In other words, Justice Souris' approach is flatly inconsistent with the federal approach proposed by Willner.

Finally, Willner argued that the Supplemental Proxy did confer a benefit on Syntel (over and above the benefit conferred upon the shareholders), and he contends that the Court may require Sytnel to pay his fees under *Merkel II* on that basis. Syntel benefitted, Willner said, because without the corrected disclosures, actions taken by Syntel under the compensation plan could have been ripe for challenge by a

shareholder. He asserted that that the corrected disclosures reduced the potential that Syntel would be dragged into costly litigation attacking action taken under the plan.

But this theory does not match the allegations in Willner's Complaint. As described above, Willner's Complaint highlights benefits that he claims to have conferred on Syntel's *shareholders*, not on the corporation. (*See* Compl. at ¶¶ 6, 10, ECF #1 at Pg. ID 3-4.) Moreover, Willner carefully noted in his Complaint that the claims in the Demand Letter seeking a correction of the Proxy "were not derivative claims [asserted on behalf of Syntel], but rather direct claims possessed by [him] and other Syntel shareholders." (*Id.* at ¶41 n.4, ECF #1 at Pg. ID 12.)

More importantly, Justice Souris rejected a benefit argument just like Willner's. He concluded that trusts should *not* be compelled to pay attorney fees for legal work that reduced the possibility of future litigation involving the trusts because that alleged benefit was too "tenuous":

> If any benefit did inure to the trusts as a result the settlement agreement [negotiated by the beneficiaries' attorneys and approved by the trial court in the Dodge Act proceedings], it was conjectural and quite different in essential nature from that benefit referred to in [a case relied upon by the beneficiaries' counsel]. The agreement probably lessened, if it did not entirely eliminate, the possibility that at the time for distribution of the corpus of each trust some of the heirs of the settlor or of any of the three life beneficiaries might sue, claiming that they and not some other claimants were entitled to the corpus, or a greater share therein thereby requiring the trustees to incur legal expenses in behalf of the trusts. Reduction or elimination of such expenses probably is of some benefit to the trusts…. If such tenuous benefit as is claimed for the trusts in this case is to be regarded as

> sufficient to justify charging legal fees and expenses to the
> [settlor's] trusts, then I see no end to the circumstances in
> which such legal fees and expenses can be charged to trusts
> and estates whenever they are involved in litigation.

*Merkel I*, 125 N.W.2d at 292-93 (Souris, J.)  The litigation-avoidance benefit to Sytnel identified by Willner is just as "tenuous" as the benefit to the trusts in *Merkel I* that Justice Souris deemed insufficient to support a fee award. *Id.*  And Willner has not identified any other benefits to Sytnel that would be sufficiently definite to support a fee award against Sytnel under Justice Souris' approach.  Accordingly, the Court rejects Willner's argument that he is entitled to a fee award because he conferred a benefit upon Syntel.

## B

Second, Willner is not entitled an award of attorney fees because the benefit that he claims to have conferred did not result from litigation.  While there may be sound policy reasons that may at some point convince the Michigan Supreme Court and/or the Michigan Legislature to permit a fee award for a benefit conferred without litigation, as described fully above in section IV(B), the current state of Michigan law does not permit such an award.

## V

The issue in this action is *not* whether, as a matter of sound policy, a shareholder should be permitted to recover his attorney fees from a corporation where he sends a demand letter that results in a benefit for the corporation's shareholders.  Willner has

advanced many reasonable arguments as to why it may be both sensible and fair to permit a fee award under these circumstances. The sole question before this Court is whether Michigan law permits such a fee award. It does not. Therefore, the Court **GRANTS** Syntel's motion to dismiss (ECF #12) and **DISMISSES** Willner's Complaint (ECF #1).

       **IT IS SO ORDERED**.

                                 /s/Matthew F. Leitman
                                 MATTHEW F. LEITMAN
                                 UNITED STATES DISTRICT JUDGE

Dated: May 2, 2017


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 2, 2017, by electronic means and/or ordinary mail.

                                 s/Holly A. Monda
                                 Case Manager
                                 (313) 234-5113